Name
**Nicholas D Scoyni**

**1701 Blaine st ,**

**Caldwell ID 83605**

Address
Tel. (208) 519 8246

U.S. COURTS

AUG 14 2020

Rcvd_____Filed_____time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

Nicholas D Scoyni

          *Plaintiff,*

vs.

Central Valley
Fund L.P,

M B financial bank
N.A

          *Defendants.*

Case No.
28 U.S.C. SS 1332: Div
Jury - yes

~~Case No.~~

**COMPLAINT**
**(28 U.S.C. § 1332: Diversity of Citizenship)**

Jury Trial Requested  X yes  ___ no

Complaint (Rev. 7/2014)         1

**JURISDICTION**

Jurisdiction in this case is based on diversity of citizenship, meaning both of these statements are true:

X  This civil action is between citizens of different states (no defendant is a citizen of the state of which I am a citizen).

X  The amount in controversy (the amount I believe the defendant owes me) is more than $75,000, not including interest and costs.

**PLAINTIFF**

My name is <u>Nicholas D Scoyni.</u> I am a citizen of the State of <u>Washington</u>.

presently residing at <u>1701 Blaine St   Caldwell, Id 83605</u>.

**DEFENDANT AND CAUSE OF ACTION**
*(Copy and use a separate page for each defendant and each different type of claim; for example, if you have two different claims against one defendant, you will use two pages. Attach a continuation page if needed, but try to be brief.)*

    A.    I am suing **Central Valley Fund L.P.,** a citizen of the State of Idaho, **California** and Delaware, doing business in Idaho, were claim of action existence is ongoing.
*(a person or entity)*

    B.    (Factual Basis of Claim) I am complaining that **from November of 2018** Defendant
                                (dates)

did the following *(state how Defendant participated in the wrongful act and include the reason Defendant so acted if known)*:

The cause of this lawsuit is the debt owed by a license agreement and then infringement of a "Servicemark", the key words 'agreement' and "Servicemark" in this lawsuit. Also as to statements made by the court in previous United States District court of Idaho orders, In the related case the district judge did not adjudicate the "Use in commerce" of a "Servicemark" to a license "agreement" made by former defendants of the use of the "Servicemark" registered with the United States patent and trademark office in the name "Offspec Solutions S.E".

In fact not once in any of the district judges orders did the district judge state the word "Servicemark" , as one must state this mark distinctively to address it's distinctive "use in commerce" factors out lined by Congress, such as in re: *Planned Parenthood Federation of America, Inc. v. Bucci*, 42 U.S.P.Q.2d 1430 (S.D.N.Y. 1997), Where holding advertising across state lines is considered "use in commerce" and then "use in interstate commerce" because phone lines are used across those lines.

This plaintiff in the related case presented the necessary document of a dated document of a website advertising transportation services under U ship advertising agents with a contractor start date of 2/10/2012 before any use of any common mark by "Offspec Solutions LLC" then constituting " use in interstate commerce" over state lines by this plaintiff according to Congress and *Planned Parenthood Federation of America, Inc. v. Bucci*, 42 U.S.P.Q.2d 1430 (S.D.N.Y. 1997), and Idaho legislature statute title 48 section 5 , 516, as to use of a "Servicemark" therein, and that NO IDAHO LAW SHELL HINDER ANY COMMON LAW RIGHTS, this was a " first in use " and "first in registration" . As many states are one or the other plaintiff has both as to this "Servicemark".

As the "Servicemark" was never adjudicated and only state trademark registrations were addressed, and two other issues existed this lawsuit has clear cause. The district judge made clear statement that this plaintiff Nicholas D Scoyni, had cause to sue in the related case where the original license holders, who were Christopher A. Salvador, Daniel R Salvador, and Wayne Salvador collectively the Salvadors and who formed then Offspec Solutions LLC.

The cause outlined by the district courts own "statements in orders" an initial agreement existed , that by all legal definition outlines the perfect aspects of what is known as a "intellectual property licensing "implied agreement". That only needs two aspects for existence , one that there was an agreement, Two that there was simply "use" by the licensed party this can be found in United States v palmer.

Also in district court orders the judge points out evidence shows the Salvadors worked directly with this plaintiff from 2015, to and after cease and desist letter issued in 2016.

> Under U.S. trademark law, a trademark or servic mark license may be express or implied. A written agreement creates a rebuttable presumption of a valid license. The absence of a written agreement is not conclusive of naked licensing or that a mark has become abandoned. Barcamerica Intern. USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 596 (9th Cir. 2002). Even if formal quality control is not present, where the particular circumstances of the arrangement indicate that the public will not be deceived, then an oral agreement may constitute a valid license. Id.

In cases where no formal agreement between the license parties exists, courts have held that close working relationships can be adequate to establish a valid license. Id. at 598. Where the license parties have engaged in a close working relationship, and may justifiably rely on each parties' intimacy with standards and procedures to ensure consistent quality, and no actual decline in quality standards is demonstrated, then there may be no abandonment. Taco Cabana Intern., Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1121 (5th Cir. 1991). For example, in Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001 (9th Cir. 1985), the court found that no abandonment existed where a licensor manufactured 90% of components sold by licensee and licensor had ten-year association with licensee and

was familiar with his ability and expertise. Similarly, in Taffy Original Designs, Inc. v. Taffy's Inc., 161 U.S.P.Q. 707, 713 (N.D. Ill.1966), the court found no abandonment existed where the licensor and licensee were sisters in business together for seventeen years, licensee's business was a continuation of the licensor's and licensee's prior business, licensor visited licensee's store from time to time and was satisfied with the quality of the merchandise offered. See also Arner v. Sharper Image Corp., 39 U.S.P.Q.2d 1282

In this case state and federal laws will be outlined as to these implied intellectual property licensing agreements". That then passed in knowledgeable interest to partners in the "Offspec Solutions LLC venture" to **Central Valley Fund , L.P.** , and M B financial bank N.A. under a specific contract, these are different defendants then in the related lawsuit, 1:18-cv-00506-BLW.

The litigants in the related lawsuit denied, and committed perjury by affidavit statements denying the disclosure and existence, partnership of these new litigants, involving different years of "use" and acquiring debt by contracts of interest release from the Salvadors to these partners Central Valley Fund, and MB financial bank.

Next the mark was never addressed properly as a "Servicemark" and time in date advertising in commerce, and a trademark is simply a name on a good of some kind. Surely the court can see these distinct differences.

Then the named defendants in this litigation were not involved in the previous related case as to the litigation or acknowledged in previous litigation by previous defendants, also this includes the years of 2019 and 2020 that under direct management of the new defendants knowingly continued direct infringement of the "Servicemark" after a 2016 cease and desist, and full knowledge of impending legal issues before the court.

These defendants did in fact have contracts that were collectively gathered from "public information" from a government regulated website by this plaintiff , namely the United States patent and trademark office, signed to knowledge as such (public Knowledge) by the attorney representative of Offspec Solutions LLC, and can be admissible under the federal rules of evidence (FRE). These contracts are the release of interest in any collective marks by the name "Offspec Solutions" signed by Daniel R Salvador, were these defendants take on all debt involving the mark "past, present, and future" including this lawsuit, and anything owed by the Salvadors in any previous case involving this plaintiff. The contracts also acquired the "implied licensing agreement" made with this plaintiff, were these defendants did enact the contract provisions in 2019 to then be responsible to pay all debt to said interest of collective marks.

C. (Legal Basis of Claim) I allege that the acts described above violated the following provisions of state law and federal law :

TITLE 48
MONOPOLIES AND TRADE PRACTICES
CHAPTER 5
REGISTRATION AND PROTECTION OF
TRADEMARKS

> 48-516. COMMON LAW RIGHTS. Nothing herein shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law.
> History:
> [48-516, added 1996, ch. 404, sec. 2, p. 1344.]

As to Idaho legislature statute title 48 section 5, 516, and the Lanham act, acts of Congress, 15 United States codes, and 37 United States Regulations, all as to Servicemark registration and regulations.

The power of the federal government to register marks comes from the commerce clause of the Constitution. Section 1 of the Trademark Act, $15 U.S.C. \S 1051$, permits application for registration of "a trademark used in commerce" ( $15 U.S.C. \S 1051(a)$ ) or of a trademark that a person has a bona fide intention to use in commerce ( $15 U.S.C. \S 1051(b)$ ).

Section 45 of the Trademark Act,                    , defines "commerce" as "all commerce which may lawfully be regulated by Congress." Section 45 defines "use in commerce" as follows:

The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this Act, a mark shall be deemed to be in use in commerce--

- (1) on goods when—

- (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

- (B) the goods are sold or transported in commerce, and

- (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

- The scope of federal trademark jurisdiction is commerce that may be regulated by the U.S. Congress. 15 U.S.C. §1127; see *Christian Faith Fellowship Church v. Adidas AG*, 841 F.3d 986, 120 USPQ2d 1640, 1642 (Fed. Cir. 2016) The types of commerce encompassed in this definition are interstate, territorial, and between the United States and a foreign country.

- "Territorial commerce" is commerce within a territory of the United States (e.g., Guam, Puerto Rico, American Samoa, or the U.S. Virgin Islands) or between the United States and a territory of the United States.

- Intrastate use of a mark may qualify as use in commerce within the meaning of the Act if the intrastate use is of a type that would, taken in the aggregate, have a direct effect on interstate commerce. See *Christian Faith Fellowship Church*, 841 F.3d at 993, 120 USPQ2d at 1645; (finding intrastate sale of two hats to out-of-state customer was "use in commerce" because such a transaction is "'quintessentially economic'" and, "taken in the aggregate, would cause a substantial effect on interstate commerce"); *Larry Harmon Pictures Corp. v. Williams Rest. Corp.*, 929 F.2d 662, 18 USPQ2d 1292 (Fed. Cir. 1991) (mark used to identify restaurant services rendered at a single-location restaurant serving interstate travelers is in "use in commerce"); *In re Silenus Wines, Inc.*, 557 F.2d 806, 194 USPQ 261 (C.C.P.A. 1977) (intrastate sale of imported wines by importer constitutes "use in commerce," where goods bearing labels supplied by applicant were shipped to applicant in United States); *In re Gastown, Inc.*, 326 F.2d 780, 140

USPQ 216 (C.C.P.A. 1964) (automotive service station located in one state was rendering services "in commerce" because services were available to customers travelling interstate on federal highways); *U.S. Shoe Corp. v. J. Riggs West, Inc.*, 221 USPQ 1020 (TTAB 1984) (billiard parlor services satisfy the "use in commerce" requirements, where the record showed that applicant's billiard parlor services were advertised in both Kansas and New York); *In re G.J. Sherrard Co.*, 150 USPQ 311 (TTAB 1966) (hotel located in only one state has valid use of its service mark in commerce because it has out-of-state guests, has offices in many states, and advertises in national magazines); *In re Federated Dep't Stores, Inc.*, 137 USPQ 670 (TTAB 1963) (mark used to identify retail department store services located in one state was in use in commerce, where the mark was used on credit cards issued to out-of-state residents, and on catalogs and advertisements shipped to out-of-state customers).

- In some cases, services such as restaurant and hotel services have been deemed to be rendered in commerce because they are activities that have been found to be within the scope of the 1964 Civil Rights Act, which, like the Trademark Act, is predicated on the commerce clause. See *In re Ponderosa Motor Inns, Inc.*, 156 USPQ 474 (TTAB 1968); *In re Smith Oil Corp.*, 156 USPQ 62 (TTAB 1967).

- The term "foreign" is not acceptable to specify the type of commerce in which a mark is used, because it does not clearly indicate that the mark is in use in a type of commerce that the U.S. Congress can lawfully regulate. Unless the "foreign commerce" involves the United States, Congress does not have the power to regulate it. Use of a mark in a foreign country does not give rise to rights in the United States if the goods or services are not sold or rendered in the United States. *Linville v. Rivard*, 41 USPQ2d 1731 (TTAB 1996), *aff'd*, 133 F.3d 1446, 45 USPQ2d 1374 (Fed. Cir. 1998); *Aktieselskabet af 21.November 2001 v. Fame Jeans Inc.*, 77 USPQ2d 1861 (TTAB 2006); *Buti v. Impressa Perosa S.R.L.*, 139 F.3d 98, 45 USPQ2d 1985 (2d Cir. 1998); *Mother's Rests. Inc. v. Mother's Bakery, Inc.*, 498 F. Supp. 847, 210 USPQ 207 (W.D.N.Y. 1980); *see also Honda Motor Co., v. Winkelmann*, 90 USPQ2d 1660 (TTAB 2009) ("[T]he evidence that applicant relies upon through its foreign registrations and Internet printouts does not demonstrate trademark use for the claimed goods. Further, these documents do not show that applicant has an intent to use the mark in the United States.")

- Offering services via the Internet has been held to constitute use in commerce, since the services are available to a national and international audience who must use interstate telephone lines to access a website. See *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, 42 USPQ2d 1430 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998) (Table).

- An applicant is not required to specify the type of commerce in which the mark is used. The USPTO presumes that an applicant who states that the mark is in use in commerce is stating that the mark is in use in a type of commerce that the U.S. Congress can regulate, unless there is contradictory evidence in the record. See regarding the circumstances where an examining attorney should inquire as to whether the mark is in use in commerce that can be regulated by the U.S. Congress.

D. I allege that I suffered the following injury or damages as a result: Financial loss, infringement (of a Servicemark), breach of contract (A implied intellectual property licensing agreement by former licensee ), defamation, their liability being "all profit" made from the mark during time under case and desist.

## DEFENDANT AND CAUSE OF ACTION
*(Copy and use a separate page for each defendant and each different type of claim; for example, if you have two different claims against one defendant, you will use two pages. Attach a continuation page if needed, but try to be brief.)*

  C.  I am suing **M B financial bank N.A** ., a citizen of the State of Idaho, **Illinois**, and Delaware, doing business in Idaho, were claim of action existence is ongoing.

*(a person or entity)*

  D.  (Factual Basis of Claim) I am complaining that on from December 2018 Defendant

      (dates)

did the following *(state how Defendant participated in the wrongful act and include the reason Defendant so acted if known)*: Same as number 3 (Defendants), as in "B" herein, were defendants did participate together in actions brought before this court in the same manor.

  E.  (Legal Basis of Claim) I allege that the acts described above violated the following provisions of state law:

→ Idaho legislature statute under title **48** section **5**
And Also :

such as in GAYLEN CLAYSON, - v- .DON ZEBE, RICK LAWSON, and LAZE, Boise, May 2012 Term 2012 Opinion No. 107 Filed: July 2, 2012 by Stephen Kenyon, Clerk
Page 4 and 5 of docket;

→ " An implied-in-fact contract exists where "there is no express agreement[,] but the conduct of the parties implies an agreement from which an obligation in contract exists." Fox, 137 Idaho at 707, 52 P.3d at 852 (quoting Cont'l Forest Prods., Inc. v. Chandler Supp. Co., 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974)). We have held that "[a]n implied in fact contract is defined as one where the terms and existence of the contract are manifested with the request of one party and the performance by the other often being inferred from the circumstances attending the performance." Id. at 708, 52 P.3d at 853 (citing Farnworth v. Femling, 125 Idaho 283, 287, 869 P.2d 1378, 1382 (1994)). Therefore, we have stated the general rule as follows: "where the conduct of the parties allows the dual inferences that one performed at the other's request and that the requesting party promised payment, then the court may find a contract implied in fact." Gray v. Tri-Way Const. Servs., Inc., 147 Idaho 378, 387, 210 P.3d 63, 72 (2009) (quoting Homes by Bell-Hi, Inc. v. Wood, 110 Idaho 319, 321, 715 P.2d 989, 991 (1986).

IV. CONCLUSION

We affirm the judgment of the district court as to its finding of an implied-in-fact contract

and award attorney fees and costs on appeal to Clayson. "
Chief Justice BURDICK and Justices EISMANN, J. JONES and W.
JONES CONCUR.
Idaho supreme court for the state of Idaho,

This following United States -v- Palmer ( S C 1888) the Lanham act as to use in commerce of a "Servicemark" (advertising of a mark). And under section 15 United States code, and under 37 United States Regulations, as to laws therein.

F. I allege that I suffered the following injury or damages as a result:
Financial loss, infringement (of a Servicemark), breach of contract (A implied intellectual property licensing agreement by former licensee ), defamation, their liability being all profit made from the mark during time under case and desist.

G. I seek the following relief from both defendants equally :
**Payer for Relief**

As the debt owed of a "Servicemark" as to liability is in Idaho and the federal system "all profit" made by defendants using the name "Offspec Solutions" as a "Servicemark" , and counterfeits after a cease and desist letter, the debt owed this plaintiff is as follows:

---As to average pay and mileage reported to federal agencies (public Knowledge)

36 million dollars for year 2017 and 2018

36 million dollars for years 2019 and 2020

----Breech of contract (the implied licensing agreement, not a standard contract so as not to confuse the court)

3 million for years 2017 and 2018

3 million for years 2019 and 2020

---Defamation as to counterfeit "Servicemarks" such as (real Offspec, or Off-spec solutions rather then Offspec Solutions, or any other admitted counterfeit).

3 million for years 2017 and 2018

3 million for years 2019 and 2020

Plaintiff asks as his rights under federal law where a counterfeit mark is used that these be multiplied by three (Treble damages). 15 U.S.C. 1117(b)

Grand total to debt owed this plaintiff, now **252 million united states dollars** is the relief asked, the evidence used in this case will consist mainly from contrasting the district judges statements and findings of fact to **intellectual property laws** the previous related case of common name, and different identified defendants involved herein.

And Idaho laws are "clear" on these subjects herein:

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury:

that I am the plaintiff in this action, that I have read the complaint, and that the information contained in the complaint is true and correct, as required by 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at __USDC Idaho__ on __8-14-20__.
              (Location)               (Date)

_____
Plaintiff's Original Signature